UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| BRIAN CARTER,<br><br>          Plaintiff,<br><br>v.<br><br>WEBER COUNTY STRIKE FORCE;<br>OFFICER LUNT; and OGDEN POLICE<br>DEPARTMENT,<br><br>          Defendants. | **REPORT AND RECOMMENDATION<br>TO GRANT DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br>(DOC. NO. 66)**<br><br>Case No. 1:23-cv-00094<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Daphne A. Oberg |

        Brian Carter, proceeding without an attorney, brought this case against Weber

County Strike Force, Ogden Police Department, and Officer Lunt (whose first name is

not identified).[1]  Mr. Carter claims his constitutional rights were violated during three

police encounters in 2021 and 2022.[2]  In his complaint, he also references the

Americans with Disabilities Act[3] (ADA), section 504 of the Rehabilitation Act,[4] and

various other federal statutes.[5]

---

[1] (*See* Am. Compl., Doc. No. 8-14.)  Mr. Carter filed the case in state court, and the
defendants removed the case to federal court.

[2] (*See id.* at 4–15.)

[3] 42 U.S.C. § 12101 et seq.

[4] 29 U.S.C. § 794.

[5] (*See* Am. Compl., Doc. No. 8-14 at 24.)

Defendants have moved for summary judgment, arguing (1) Mr. Carter fails to adequately plead or offer evidence supporting any cognizable claim for violations of the constitution or the ADA; (2) Officer Lunt is entitled to qualified immunity, and (3) claims against Ogden City Police Department and Weber County Strike Force fail because Mr. Carter does not plead or offer evidence supporting municipal liability.[6]  Mr. Carter opposes the motion and requests additional time for discovery pursuant to Rule 56(d).[7]

Because Mr. Carter fails to adequately plead his claims or offer any supporting evidence, the undersigned[8] recommends the district judge grant Defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[10]  But "where the non moving party will bear the burden of proof at trial on a dispositive issue[,] that party must go beyond the pleadings and designate

---

[6] (Defs.' Mot. for Summ. J. (MSJ), Doc. No. 66.)

[7] (Obj. & Rebuttal to Def.'s Mot. for Summ. J. (Obj. & Rebuttal), Doc. No. 67); Fed. R. Civ. P. 56(d).

[8] This case is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 56.)

[9] Fed. R. Civ. P. 56(a).

[10] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."[11]

A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[12]  This means "unsupported conclusory allegations [] do not create a genuine issue of fact,"[13] and "mere speculation unsupported by evidence is insufficient to resist summary judgment."[14]

Because Mr. Carter proceeds pro se, his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[15]  Still, pro se plaintiffs must "follow the same rules of procedure that govern other litigants."[16]  For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[17]  While courts must make some allowances for

---

[11] *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (citation modified) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[12] Fed. R. Civ. P. 56(c)(1)(A).

[13] *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) (citation modified).

[14] *Martinez v. CO2 Servs.*, 12 F. App'x 689, 695 (10th Cir. 2001) (unpublished) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144–45 (10th Cir. 1998)).

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[17] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[18] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[19]

## BACKGROUND

### A.  Mr. Carter's Complaint

Where Defendants' motion is partly based on an argument that Mr. Carter's pleadings are inadequate, Mr. Carter's amended complaint (the operative complaint) is summarized here.  In the amended complaint, Mr. Carter describes a litany of grievances against various individuals and entities who are not named as defendants. But the allegations relating to the named defendants focus on three police encounters in 2021 and 2022.

First, Mr. Carter alleges that on January 15, 2021, unidentified Weber County Strike Force officers pulled him over without probable cause while he was driving to work.[20]  According to Mr. Carter, the officers falsely stated they didn't see his turn signal indicator light, even though his turn signal was on.[21]  He alleges the officers unlawfully searched his car without his consent and seized his gun, which was under some clothes

---

[18] *Hall*, 935 F.2d at 1110.

[19] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

[20] (Am. Compl., Doc. No. 8-14 at 4.)

[21] (*Id.* at 4–5.)

and not in plain sight.[22]  The officers told him he would need to consent to an onsite

blood test to get his gun back, and he declined.[23]  The officers then called for a drug

sniffing dog and an ambulance.[24]  Mr. Carter alleges the "long pullover" caused him to

be five hours late to work.[25]

      Mr. Carter next alleges that on July 6, 2021, a man "using racial slurs" confronted

him while he was sitting in his vehicle in a public park.[26]  Mr. Carter alleges the man

called the police and falsely reported that Mr. Carter had pulled a gun on him.[27]

According to Mr. Carter, "about 12 officers approached [him] with guns drawn

threatening to shoot him and asking [him] to exit his vehicle."[28]  The officers searched

Mr. Carter, took his weapon from the car, and impounded the car.[29]  After the car was

towed, they searched the trunk and found a "hookah device" containing tobacco.[30]  The

officers then gave Mr. Carter an "arbitrary test where they automatically laughed and

---

[22] (*Id.* at 5.)

[23] (*Id.* at 5–6.)

[24] (*Id.* at 6.)

[25] (*Id.* at 5.)

[26] (*Id.* at 7–8.)

[27] (*Id.* at 8.)

[28] (*Id.*)

[29] (*Id.*)

[30] (*Id.*)

failed him," then arrested him.[31]  Mr. Carter asserts the charges against him were later

dismissed based on surveillance footage.[32]

      Finally, Mr. Carter alleges that on January 24, 2022, he heard a boy being raped

at the "rescue mission" and called the police.[33]  According to Mr. Carter, the responding

officers—Officer Lunt and his partner—did not search for the child.[34]  Instead, they

"help[ed] cover up the crime."[35]  Specifically, Mr. Carter alleges Officer Lunt and his

partner laughed at him and told him to "take [his] pills" while he was praying.[36]  Mr.

Carter also alleges he was "cut by Officer Lunt's partner with a personal knife who

slashed his arm and backpack twice cutting [him] in the process."[37]  Officer Lunt asked

---

[31] (*Id.*)

[32] (*Id.* at 8–9.)  Mr. Carter alleges that approximately thirty days after this second encounter, he was arrested while stealing a car from a dealership and charged with grand theft auto.  (*Id.* at 11–12.)  Although he asserts his constitutional rights were violated by various nonparties (such as his public defenders) during the ensuing criminal case, he does not appear to bring any claims against the named defendants relating to this arrest.  (*See id.*)

[33] (*Id.* at 13.)

[34] (*Id.*)

[35] (*Id.*)

[36] (*Id.* at 14.)

[37] (*Id.*)

his partner why he did that and the other officer replied, "Just because."[38]  Officer Lunt

then arrested Mr. Carter.[39]

Mr. Carter brings claims under 42 U.S.C. § 1983 for violations of his

constitutional rights.[40]  He lists five specific counts under the Second, Fourth, Fifth,

Eighth, and Fourteenth Amendments.[41]  He also briefly references the First Amendment

and various federal statutes, including the ADA.[42]  Mr. Carter seeks monetary damages

of more than $5 million and asks the court to pardon him and overturn an unspecified

conviction.[43]

B.  *Procedural History*

Mr. Carter originally filed this case in state court.  After Defendants removed the

case to federal court and filed an answer,[44] a scheduling order was entered.[45]  Per this

order, fact discovery closed on May 7, 2024, and expert discovery closed on August 28,

---

[38] (*Id.*)

[39] (*Id.*)

[40] (*See id.* at 20, 26 (citing 42 U.S.C. § 1983); *see also id.* at 19–20, 23–24, 27–31 (referencing the First, Second, Fourth, Fifth, Eighth, and Fourteenth Amendments).)

[41] (*Id.* at 29–31.)

[42] (*Id.* at 24.)

[43] (*Id.* at 31.)

[44] (Answer, Doc. No. 32.)

[45] (Scheduling Order, Doc. No. 60.)

2024.[46]  Two days before the close of expert discovery, Mr. Carter filed a motion to

appoint counsel and for "discovery evidence in support of subpoena," seeking service of

subpoenas on third parties.[47]  The undersigned denied Mr. Carter's motion for

appointment of counsel and service of subpoenas.[48]  The order noted Mr. Carter's

request for subpoenas was untimely, where fact discovery closed on May 7 and Mr.

Carter did not file his motion until August 26.[49]

    About a month after expert discovery closed, and while Mr. Carter's discovery

motion was pending, Defendants moved for summary judgment.[50]  In support of their

motion, Defendants attached police reports relating to the three main police encounters

described in Mr. Carter's amended complaint.[51]

    In response, Mr. Carter filed a document titled "Objection and Rebuttal to

Defendant's Motion for Summary Judgment."[52]  Mr. Carter argued he was unable to

properly support his allegations because the court had not ruled on his discovery

---

[46] (*Id.*)

[47] (Mot. for Req. of Counsel & Disc. Evid. in Supp. of Subpoena (Pl.'s Mot.), Doc. No. 63.)

[48] (Mem. Decision & Order Den. Mot. for Req. of Counsel & Disc. Evid. in Supp. of Subpoena (March 25, 2025 Order), Doc. No. 73.)

[49] (*Id.* at 4.)

[50] (*See* MSJ, Doc. No. 66 (filed Sept. 27, 2024); Scheduling Order, Doc. No.

[51] (Exs. A–C to MSJ, Doc. Nos. 66-1–66-3.)

[52] (Obj. & Rebuttal, Doc. No. 67.)

motion, and he requested additional time for discovery under Rule 56(d).[53]  He also reiterated many of the allegations in his amended complaint, and argued Defendants were not entitled to summary judgment.[54]  Mr. Carter did not submit an affidavit or any other evidence with this filing.  Defendants then filed a reply.[55]

## ANALYSIS

Mr. Carter's request for additional discovery under Rule 56(d) is addressed first, before turning to the merits of the summary judgment motion.  As explained below, Mr. Carter has not demonstrated additional discovery is merited at this stage.  He also fails to adequately plead or offer any evidence supporting his claims against the named defendants.  Accordingly, the undersigned recommends the district judge grant the motion for summary judgment.

I.    Rule 56(d) Request

Rule 56(d) of the Federal Rules of Civil Procedure provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or

---

[53] (*Id.* at 1.)

[54] (*See id.* at 3–14.)

[55] (Reply in Supp. of Defs.' Mot. for Summ. J. (Reply), Doc. No. 70.)

(3) issue any other appropriate order."[56]    The District of Utah's local rules require a party to make a Rule 56(d) request by separate motion rather than in a response memorandum.[57]

Mr. Carter's Rule 56(d) request is deficient under both the federal and local rules because he did not file it as a separate motion or support it with an affidavit or declaration.  His request also fails on the merits.  "Rule 56(d) relief is inappropriate where the nonmoving party had an opportunity to make full discovery" but "simply chose not to do so."[58]  Here, Mr. Carter had an opportunity to make full discovery during the fact discovery period.  Although he moved for service of subpoenas before expert discovery closed, his motion was untimely because he filed it nearly four months after the close of fact discovery.[59]  Mr. Carter does not explain why the discovery he now seeks (such as bodycam video) could not have been obtained during the fact discovery period.  Accordingly, Mr. Carter is not entitled to reopen discovery at this stage, and there is no basis to defer a ruling on the summary judgment motion.

---

[56] Fed. R. Civ. P. 56(d).

[57] DUCivR 7-1(a)(3) ("A party may not make a motion, including a motion under Fed. R. Civ. P. 56(d), or a cross-motion in a response or reply.  Any motion must be separately filed.").

[58] *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, No. 2:12-cv-00381, 2019 U.S. Dist. LEXIS 152363, at *3–4 (D. Utah Sept. 5, 2019) (unpublished) (citation modified) (quoting *Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1554 (10th Cir. 1993)).

[59] (*See* March 25, 2025 Order 4, Doc. No. 73.)

II. <u>Motion for Summary Judgment</u>

Turning to Defendants' motion, neither party provided affidavits or declarations supporting their respective factual assertions.  Defendants rely solely on police reports from the three police encounters at issue, and Mr. Carter does not support his allegations with any evidence.

At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the "content or substance of the evidence must be admissible."[60]  Police reports may not be used on summary judgment to the extent they contain inadmissible hearsay.[61]  But police reports are sometimes deemed admissible as records of a "regularly conducted activity" under Rule 803(6) or as public records under Rule 803(8) of the Federal Rules of Evidence, to the extent they incorporate an officer's firsthand observations.[62]

It is unnecessary to decide whether Defendants' police reports are admissible, because Defendants also argue Mr. Carter fails to adequately plead or offer evidence supporting his claims.  As the party who bears the burden of proof at trial, Mr. Carter

---

[60] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (citation modified).

[61] *See Jackson v. Park Place Condos. Ass'n, Inc.*, 619 F. App'x 699, 703–04 (10th Cir. 2015) (unpublished).

[62] *See, e.g.*, *Eldredge v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-00900, 2014 U.S. Dist. LEXIS 193133, at *5 (D. Utah Nov. 14, 2014) (unpublished) (finding police reports admissible on summary judgment under Rules 803(6) and 803(8), where the reports did not contain witness interviews and the opposing party did not object to them); Fed. R. Evid. 803(6), (8); *see also* Fed. R. Evid. 803(8) advisory committee's note ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.").

must come forward with evidence sufficient to raise a triable dispute of material fact as to each element of his claims.[63]  Here, Mr. Carter fails to provide any evidence supporting the factual allegations in his complaint.  And even if he had backed his allegations with evidence, the facts Mr. Carter alleges are insufficient to support his claims against the named defendants.  In other words, even taking Mr. Carter's factual allegations as established, they are inadequate to support his claims of constitutional or statutory violations by Defendants.  Consequently, Defendants have demonstrated they are entitled to summary judgment, even if the police reports are not considered.

> A.  *Section 1983 Claims Against Ogden City Police Department and Weber County Strike Force*

Defendants argue Mr. Carter's § 1983 claims against the government entity defendants fail because Mr. Carter does not plead (or identify evidence supporting) facts giving rise to municipal liability.[64]

As an initial matter, Ogden City Police Department and Weber County Strike Force are not independent legal entities subject to suit.  "The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued."[65]  In Utah, municipalities and counties may sue or be sued,[66] but there is no statutory authority permitting lawsuits against municipal or county subdivisions such as

---

[63] *See McKnight*, 149 F.3d at 1128.

[64] (MSJ 11–13, Doc. No. 66.)

[65] *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) (citing Fed. R. Civ. P. 17(b)).

[66] Utah Code Ann. §§ 10-1-202, 17-50-302(2)(a)(i).

police departments.[67]  As a result, Ogden City Police Department and Weber County

Strike Force are not legal entities subject to suit separate from the city or the county.[68]

Some courts have construed pro se complaints against a governmental

subdivision as asserting a claim against the main governmental entity.[69]  But even

liberally construing Mr. Carter's complaint as asserting claims against Ogden City and

Weber County, his claims still fail because Mr. Carter fails to demonstrate a genuine

dispute of material fact exists as to municipal liability.

Section 1983 provides a recovery mechanism for violations of federal rights in

certain circumstances.[70]  "To establish a cause of action under section 1983, a plaintiff

must allege (1) deprivation of a federal right by (2) a person acting under color of state

law."[71]  But "a local government may not be sued under § 1983 for an injury inflicted

---

[67] *See Kojima v. Lehi City*, No. 2:13-cv-00755, 2015 U.S. Dist. LEXIS 92072, at *10–11 (D. Utah July 14, 2015) (unpublished).

[68] *See id.* (finding Utah law did not permit a city's policy department to be sued); *Nugent v. Davis Cnty. Sheriff's Off.*, No. 1:21-cv-00086, 2022 U.S. Dist. LEXIS 101003, at *2 (D. Utah June 6, 2022) (unpublished) (finding a county sheriff's office was not a suable entity).

[69] *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) ("Plaintiff actually names Salt Lake County Sheriff's Office as the defendant.  However, the sheriff's office is not an entity that can sue and be sued.  Thus, an official-capacity claim is construed to be against the main governmental entity, Salt Lake County." (citations omitted)); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008) (unpublished) ("[T]he Court construes Plaintiff's claim against the Sheriff's Office as a claim against Salt Lake County itself.").

[70] *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

[71] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

solely by its employees or agents."[72]  "Instead, 'the government as an entity' may only

be held liable 'when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury.'"[73]

      "There are three requirements for municipal liability under 42 U.S.C. § 1983:

(1) the existence of an official policy or custom; (2) a direct causal link between the

policy or custom and the constitutional injury; and (3) that the defendant established the

policy with deliberate indifference to an almost inevitable constitutional injury."[74]  The

"municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law; (3) the decisions of
> employees with final policymaking authority; (4) the ratification by such final
> policymakers of the decisions—and the basis for them—of subordinates to
> whom authority was delegated subject to these policymakers' review and
> approval; or (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the injuries that
> may be caused.[75]

---

[72] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[73] *Id.* (quoting *Monell*, 436 U.S. at 694).

[74] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

[75] *Waller*, 932 F.3d at 1283 (citation omitted).

Mr. Carter's allegations relate to actions of individual police officers during the encounters described in the complaint.  Mr. Carter's complaint contains conclusory references to some requirements of municipal liability.  For example, he alleges "the municipality failed to train officers on use of secondary weapons, adequate behavior, and nondiscriminatory actions."[76]  But on summary judgment, Mr. Carter identifies no evidence supporting a failure-to-train theory against Ogden City or Weber County.  Likewise, he fails to present evidence that either Ogden City or Weber County had a formal policy relating to the alleged constitutional violations during his police encounters.  Nor does Mr. Carter offer evidence of "similar mistreatment of similarly situated individuals within the municipality," as required to show an informal custom.[77]  Finally, he offers no evidence that final policymakers ratified individual officers' actions.  In sum, Mr. Carter fails to come forward with evidence sufficient to create a triable dispute of fact under any theory of municipal liability against Ogden City or Weber County.

---

[76] (Am. Compl., Doc. No. 8-14 at 27.)  He also offers the following statement: "The municipality possessed final policy authority from the local governing body regarding acts where the final policy maker engaged in acts acting as a final maker who caused deprivation of [Mr. Carter's] rights where the policy makers act was closely related to the defamation of [his] rights as to the moving party that caused the injury."  (*Id.*)  Not only is this allegation unclear, Mr. Carter does not plead specific facts (or offer supporting evidence) giving rise to a plausible inference that a formal policy or informal custom exists.  *See Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015) (A plaintiff "cannot simply allege there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists.").

[77] *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1289 (D. Utah 2019) (citing *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)).

Accordingly, Ogden City Police Department and Weber County Strike Force are entitled to summary judgment on Mr. Carter's § 1983 claims.

### B. Section 1983 Claims Against Officer Lunt

Next, Defendants argue Officer Lunt is entitled to qualified immunity on Mr. Carter's § 1983 claims.  Because Mr. Carter fails to plead or offer evidence supporting a finding that Officer Lunt violated his constitutional rights under clearly established law, Officer Lunt is entitled to qualified immunity.

The doctrine of qualified immunity protects government officials "from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[78]  It provides broad protection, shielding "all but the plainly incompetent or those who knowingly violate the law."[79] Qualified immunity operates as immunity from suit, rather than a simple defense to liability.[80]  When a § 1983 defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate: (1) the officer's alleged conduct violated a constitutional right which was (2) clearly established at the time of the violation, such that "every reasonable official would have understood[] that such conduct constituted a violation of

---

[78] *Crowson v. Wash. Cnty. State of Utah*, 983 F.3d 1166, 1177–78 (10th Cir. 2020) (citation modified) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

[79] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[80] *See Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

that right."[81]  If a plaintiff's claim fails on either prong, qualified immunity protects the

defendant from suit.[82]

      Here, Mr. Carter only alleges Officer Lunt was involved in the January 24, 2022

encounter.[83]  Mr. Carter claims Officer Lunt's partner cut Mr. Carter's arm and backpack

with a knife during this incident—but this other officer is not named as a defendant.[84]

Mr. Carter's allegations specific to Officer Lunt are as follows: (1) he failed to investigate

Mr. Carter's report of an assault on a child; (2) he laughed at Mr. Carter and told him to

take his pills, and (3) he asked the other officer "why he did that" when the other officer

cut Mr. Carter.[85]  Mr. Carter also suggests all the officers present during this incident

"negligently" failed to protect him.[86]

---

[81] *Crowson*, 983 F.3d at 1178 (citation modified) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)).

[82] *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

[83] (*See* Am. Compl., Doc. No. 8-14 at 13–14, 21–22.)

[84] Mr. Carter does not identify Officer Lunt's partner as a defendant—either by name or as a John Doe.  (*See id.* at 16–17 (listing the defendants).)  But he states he is seeking "relief for damages cause by Ogden Police Department, Weber County Strike Force, Public Agents AP and P officers and Officer Lunt's partner," and is "prevented from doing so because of the Defendants['] hindrances . . . ."  (*Id.* at 16.)  Read liberally, this could suggest Mr. Carter did not initially name Officer Lunt's partner as a defendant because his identity was unknown.  However, Defendants represent they served the police reports attached to their motion on Mr. Carter as part of their initial disclosures at the outset of discovery, and these reports identify Officer Lunt's partner by first initial and last name.  (*See* Reply 2, Doc. No. 70; Ex. C to MSJ, Doc. No. 66-3.)  Despite receiving this information at the outset of discovery, Mr. Carter never moved to add Officer Lunt's partner as a defendant.

[85] (*See* Am. Compl., Doc. No. 8-14 at 13–14, 21–22.)

[86] (*Id.* at 22.)

Mr. Carter offers no evidence on summary judgment to support these allegations. And even if he had offered supporting evidence, Officer's Lunt's alleged actions did not violate Mr. Carter's constitutional rights under clearly established law.  First, Officer Lunt's alleged failure to investigate the assault Mr. Carter reported did not violate Mr. Carter's rights under clearly established law because police generally "have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another."[87]  Second, the alleged laughter and insult do not amount to a constitutional violation.  Harsh language alone is "unlikely" to render a search or seizure unreasonable under the Fourth Amendment.[88]  And general taunting by a police officer is not considered a clearly established constitutional violation.[89]  In other words, Officer Lunt's alleged laughter and taunts about taking pills did not violate Mr. Carter's constitutional rights under clearly established law.

Mr. Carter's allegations regarding the cutting of his arm and backpack are also insufficient to state a claim against Officer Lunt.  It is well established that "a law enforcement official who fails to intervene to prevent another law enforcement official's

---

[87] *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *see also Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1261 (10th Cir. 1998) ("Generally, state actors are liable only for their own acts, and not the violent acts of third parties.").

[88] *Holland ex. rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001).

[89] *See Est. of Redd v. Love*, 62 F. Supp. 3d 1268, 1278–79 (D. Utah 2014) (finding alleged taunting by an officer during an arrest did not violate a clearly established right); *Ravines de Schur v. Unified Police Dep't*, No. 2:22-cv-00061, 2022 U.S. Dist. LEXIS 65706, at *4–5 (D. Utah Apr. 7, 2022) (unpublished) (finding a plaintiff's allegations that a police officer yelled and insulted her during a phone call failed to state any cognizable constitutional claim).

use of excessive force may be liable under 1983."[90]   But an officer may only be liable for

a failure to intervene if he (1) "observed or had reason to know of a constitutional

violation" and (2) had a "realistic opportunity to intervene."[91]   Even assuming Mr. Carter

could show Officer Lunt's partner used excessive force,[92] Mr. Carter does not allege (or

offer evidence supporting a finding) that Officer Lunt had a reasonable opportunity to

intervene.   For instance, he does not allege Officer Lunt had advance notice that his

partner would cut Mr. Carter.   And in fact, he alleges Officer Lunt immediately afterward

asked his partner "why he did that"—suggesting Officer Lunt was surprised.   Nothing in

Mr. Carter's allegations, even if proven, could support a finding that Officer Lunt had a

realistic opportunity to prevent his partner from cutting Mr. Carter's arm.   Accordingly,

Officer Lunt's alleged actions cannot support a claim for failure to intervene under

clearly established law.

Lastly, although Mr. Carter challenges Officer Lunt's conduct during the arrest

(as described above), he does not allege (or offer evidence that) he was arrested

without probable cause.[93]   He provides no information regarding the basis (or lack

---

[90] *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

[91] *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (citation modified).

[92] Although they are not relied upon here, according to the police reports, officers cut Mr. Carter's backpack straps because he was handcuffed and they needed to remove the backpack in order to place him in a patrol vehicle.  (*See* Ex. C to MSJ, Doc. No. 66-3.)  The police reports do not mention Mr. Carter being cut, and they indicate that other than the backpack straps being cut, "no further damage was done."  (*Id.*)

[93] The police reports indicate officers arrested Mr. Carter for abuse of the 9-1-1 system, after he reported two "non-existent emergencies" within a few hours, including six calls

thereof) for his arrest during this encounter.  Accordingly, he does not allege a constitutional violation related to the arrest itself.

For all these reasons, Mr. Carter cannot overcome qualified immunity, and Officer Lunt is entitled to summary judgment on the § 1983 claims.

### C.  Other Claims

Mr. Carter's passing references to the ADA, Rehabilitation Act, and other federal statutes fail to state a claim.  And he fails to support any suggested claims with evidence on summary judgment.

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[94]  And section 504 of the Rehabilitation Act prohibits discrimination or exclusion based on disability for programs receiving federal funding.[95]  As Defendants note, Mr. Carter does not allege he is disabled as defined in the ADA and Rehabilitation Act[96] —nor does he present evidence of disability on summary judgment.

---

to 9-1-1.  (*See* Ex. C to MSJ, Doc. No. 66-3.)  Regardless of whether these reports are considered, Mr. Carter fails to plead the arrest was without probable cause or carry his burden on summary judgment to provide supporting evidence.

[94] 42 U.S.C. § 12132.

[95] 29 U.S.C. § 794.

[96] *See* 42 U.S.C. § 12102(1)(A) (defining "disability" under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities  . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment"); 29 U.S.C. § 705(9)(B) (incorporating the ADA's definition of disability).

Further, Mr. Carter does not explain what government programs or services he was denied access to, as required to state a claim under these statutes.

The other federal statutes referenced in the amended complaint (18 U.S.C. § 242[97] and 34 U.S.C. § 12601[98]) do not provide a private cause of action.[99] Accordingly, Defendants are entitled to judgment as a matter of law on Mr. Carter's claims under the ADA, Rehabilitation Act, and other federal statutes referenced in the amended complaint.

## RECOMMENDATION

Even taking Mr. Carter's factual allegations as established, they are inadequate to support his claims of constitutional or statutory violations by Defendants. Where Mr. Carter fails to adequately plead his claims against the named defendants or to support them with evidence on summary judgment, the undersigned recommends the district judge grant Defendants' motion for summary judgment.[100] The parties have the right to

---

[97] This statute criminalizes the willful deprivation of constitutional or legal rights by a public official or agent.

[98] This statute permits the United States Department of Justice to investigate patterns of police misconduct—and to seek legal remedies to stop such practices.

[99] *See Houck v. Heaton*, 515 F. App'x 725, 726 (10th Cir. 2013) (unpublished) ("18 U.S.C. § 242 does not create a private civil cause of action."); *Tucker v. United States Ct. of Appeals for Tenth Cir.*, 815 F. App'x 292, 294 (10th Cir. 2020) (unpublished) (explaining 34 U.S.C. § 12601 "affords enforcement only to the Attorney General").

[100] (Doc. No. 66.)

object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[101]

DATED this 8th day of August, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[101] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).